**Dale Artis OLIVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–81–042–CR.**

Court of Appeals of Texas, Texarkana.

Dec. 1, 1981.

David Pickett, Dallas, for appellant.

Henry Wade, Criminal Dist. Atty., William D. Sheetz, Asst. Dist. Atty., Dallas, for appellee.

CORNELIUS, Chief Justice.

In a jury trial Dale Artis Oliver was convicted of aggravated robbery and assessed punishment at thirty-five (35) years confinement.

The appeal presents two grounds of error. The first asserts that the evidence is insufficient to support the conviction because there was a failure to prove that the complaining witness was in fear of imminent bodily injury at the time of the commission of the offense.

The State's evidence revealed that on the night of September 6, 1979, the complainant, Jesse Hutchins, was awakened from his sleep when the appellant switched on the bedroom light in Hutchins' home. The appellant was standing at the foot of Mr. Hutchins' bed armed with a .22 caliber automatic rifle. Mr. Hutchins yelled, "What the hell's going on here?" The appellant told Mr. Hutchins, "Just shut up and give me your money" and after Mr. Hutchins threw $35.00 on the bed the appellant stated, "Man, I'm talking about your big money, I want your wallet, your billfold ...

you _____ _____, I want your wallet or I'm going to kill you." Mr. Hutchins observed the appellant for some ten minutes during his initial encounter with him and he testified there was no doubt in his mind that the appellant was serious about robbing and killing him. When the appellant bent over Mr. Hutchins' bed, Mr. Hutchins bolted for the door and appellant shot him in the right arm. The appellant then pursued him to the back of his residence and screamed, "I'm going to kill you, you _____ _____", and shot at him two or three more times. The appellant fled the scene with two other persons, one a juvenile on a bicycle and the other an unidentified person driving Mr. Hutchins' automobile who crashed it into a brick wall. Mr. Hutchins later positively identified the appellant as the robber.

Appellant focuses on the following testimony by Mr. Hutchins to support his contention that imminent fear of bodily injury was not shown:

"Q Is it a fair thing to say that you really, that you weren't scared until it was all over with?

A I didn't realize how scared I was until it was all over with and then I started shaking.

Q Well, let me ask you this: have you ever made the statement before, 'I really wasn't scared until it was all over with'?

A I didn't really realize I was scared until it was all over with."

At other points in his testimony, Mr. Hutchins unequivocally stated that appellant put him in fear of imminent bodily injury. We think a reasonable and permissible interpretation of the quoted testimony was that, as the witness said, he did not realize until later just how scared he was. The circumstances surrounding the commission of the offense confirm Mr. Hutchins' testimony that he was in fear at the time. If the quoted testimony could be considered a contradiction of Hutchins' earlier testimony, it was the jury's province to resolve conflicts in the evidence, and we find that a rational trier of fact could find beyond a reasonable doubt that the victim here was placed in

imminent fear of bodily injury during the commission of the offense. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The second ground of error argues that the manner in which the punishment was imposed in this case violates the United States Constitution's prohibition against cruel and unusual punishment. The basis for the argument is that the jury was allowed to assess punishment within the general range of five years to ninety-nine years without guidelines or instructions as to how they should arrive at the proper punishment. Appellant cites no authority for his proposition, but analogizes the situation here with those in death penalty cases, and urges that the U.S. Supreme Court's required guidelines in those cases should apply with equal force to a case of this kind. We disagree. The jury here was not left without instructions concerning the proper punishment. They were given the standard charge at the punishment stage of the trial which specified the range of punishment and advised what they could properly consider in assessing the punishment. Evidence of the appellant's previous criminal record and his bad reputation for being a peaceful and law-abiding citizen was also produced for the jury. In those circumstances it cannot be said that the jury's assessment was arbitrary or was without a proper consideration of the offender and the circumstances of the offense. We are unwilling to impose upon the jury in ordinary felony cases the strict punishment guidelines required in those cases involving the ultimate punishment of death.

The judgment of the trial court is affirmed.